## NEW YORK LIFE INS. CO. v. ARONSON et al.

### No. 3397.

District Court, W. D. Pennsylvania.

April 4, 1941.

Smith, Buchanan & Ingersoll and William H. Eckert, all of Pittsburgh, Pa., for plaintiff.

Karl W. Warmcastle, of Pittsburgh, Pa., for defendants.

GIBSON, District Judge.

By the instant suit the complainant seeks to reform four annuity certificates by reducing the amount of the monthly annuity specified in each.

The defendants, Frances L. Aronson and Esther L. Reich, are daughters of one Tessie Landaw, the insured, and beneficiaries under the policies, and the other defendants are contingently interested in the certificates in suit.

The basic allegation of the complaint is that the policies upon which the annuity certificates were issued were obtained pursuant to a misstatement of the age of Tessie Landaw, in that her application for the policies recited the date of her birth as August 6, 1879, when in act she was born on February 13, 1874.

The Pennsylvania Insurance Act of 1921, P.L. 682, § 410(e) 40 P.S.Pa. § 510(e), incorporated as one of the provisions of each policy, is as follows: "If the age of the Insured has been misstated, the amount payable hereunder shall be such as the premium paid would have purchased at the correct age."

The court has had no difficulty whatever in determining that Tessie Landaw, the insured, was born in 1874, and not

687

in 1879, as stated. This fact is established by the deposition of her brother, Thomas (Tewia or Tewel anglicized) Rozenthal, and by duly certified copies of the birth records of Augustow, Poland. By the records it appears that Tauba Chaja Rosenthal was born on February 13, 1874. The uncontradicted testimony was that the first name, "Tauba" was the Polish-Jewish equivalent of "Tessa" or "Tessie".

Objection was made to the introduction of the several birth records offered and received in evidence, the reason assigned being: "There is no record of the law under which these were kept or that the person making the same was the custodian of the records at the time the entry was made, or that he was required by law to keep such records."

The objection is without merit, as it undertakes to prescribe requirements for the introduction of foreign records not specified in either Rule 44 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, or the Federal Act of 1936, 28 U.S.C.A. § 695e. By Rule 44, an official record kept in a foreign state or country may be evidenced by a copy attested by the officer having custody of it, accompanied by a certificate that such officer has the custody of it, the certificate being made by the secretary of embassy, consul * * * or by any officer in the foreign service of the United States stationed in the foreign state or country in which the record is kept, and authenticated by the seal of his office. The Act of 1936 is substantially of like import. The records in the instant case were first attested by the Registrar of Vital Statistics of Non-Christian Denominations, with his seal of office attached. The authenticity of the Registrar's signature and seal, and that the birth certificate had been issued in accordance with the pertinent Polish laws, was certified under his seal of office by the County Commissioner Augustow; and, in turn, the genuineness of the signature and seal of the County Commissioner of Augustow, and that the document had been issued in accordance with the proper laws, was certified under the signature of the Governor's Agents and the seal of the Governor of the Province in which Augustow was situated. And further, the Chief of Department of the Ministry of the Interior of Poland certified to the genuineness of the signature of the representative and seal of the Governor of Bialystok Province. And, finally, the Vice Consul of the United States at Warsaw,

Poland, under his seal, certified that the signature of the Acting Minister of the Interior is true and genuine and that he was duly authorized to perform such acts. In view of these certifications, the records were properly admitted under the requirements of Rule 44 and the Act of 1936, and common law.

As an affirmative defense to the complaint the defendants have pleaded accord and satisfaction. This claim is based upon identical letters prepared by (except last sentence) and addressed to the complainant for signature by the beneficiaries under the policies, and signed by each of them. Each letter, except as to number of the certificates, is as follows:

"The above numbered Certificates represents a mutual agreement between you and myself in settlement of four Policies enumerated in said Certificates, which have become death claims.

"I understand that once I have accepted said Certificates, I will not have the right to make any change in them whatsoever. I also realize that I will not have the right to commute any unpaid benefits. Right to change named beneficiary reserved."

General as are the terms of the letters signed by the beneficiaries, it does not follow that they establish accord and satisfaction in respect to the age of the insured. To establish that it is necessary to prove that the minds of the parties have met, and have met upon the same subject matter. It will be noted that the agreements (exhibits "F" and "G") specifically mention but two mattters. By one the beneficiary relinquishes any right to commute any unpaid benefits, and by the other she has claimed the right to change the named beneficiary. These were the matters in controversy at the time. Prior to her death the insured had offered plaintiff an affidavit which, she claimed, tended to fix the date of her birth in 1883, and not 1879, as stated in the application. This affidavit was founded upon the unsupported recollection of an older brother, and which contained a statement indicating uncertainty as to the date of birth. At the time this affidavit was presented the plaintiff had refused to change the amount payable under the policy unless more specific evidence were given as to the date. This declaration had been repeated to the beneficiaries after the death of the insured. Officers of plaintiff company testified that it was the universal policy of the company, when sending out such settlement letters as that

quoted for signature by the beneficiary, to attach a form letter stating that adjustment of the amount of the policy would be made upon satisfactory proof being offered showing misstatement of the age of the insured. The plaintiff produced from its files carbon copies of such letters addressed to the beneficiaries, but no witness who testified to actual mailing of such letters. The defendants denied receipt of originals of the carbon copies.

■ That the plaintiff had regarded the age matter as closed by the agreements of the beneficiaries seems rather decisively negatived by its action subsequent to the execution of the settlement agreement. At a time when it had no knowledge of the actual date of the birth of insured, and when the only question was whether the birth was in 1879, as stated in the applications for the policies, or in 1883, as claimed by the beneficiaries, plaintiff went to the expense of having its agent investigate the matter in the birth records of Poland, and only after such investigation was it determined that neither of the dates mentioned was correct. Under the circumstances it is hardly conceivable that the expense of such an investigation would have been incurred had the plaintiff felt itself secured as to the 1879 birth date by the beneficiaries' agreements. Its action strongly corroborates the testimony of its agents to the effect that the form of settlement adopted was not that used in settlement of a dispute in respect to the statement of age of insured. The court is satisfied that neither plaintiff nor defendants were precluded from opening the age question, pursuant to the terms of the policy and the statute, by the agreement signed by beneficiaries. Therefore a decree will be entered for plaintiff upon presentation to the court.